IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI

MATTHEW MCNEALY,          )
                          )
          Plaintiff,      )
                          )
v.                        )
                          )
CITY OF ST. LOUIS, MISSOURI,  )
                          )   No.  2322-CC00416
                          )
JENNIFER CLEMONS-ABDULLAH,    )
                          )
JACLYN RATTLER,           )
                          )
          Defendants.     )
                          )

**FILED**

APR 15 2024

22ND JUDICIAL CIRCUIT
CIRCUIT CLERK'S OFFICE
BY _MJD_____ DEPUTY

## FIRST AMENDED PETITION

COMES NOW Plaintiff, by and through his attorney, Gonzalo Fernandez, and for

his Petition against the above-captioned Defendants, hereby states as follows:

## INTRODUCTION

On July 2, 2022, Plaintiff Matthew McNealy (hereinafter "McNealy") was an

inmate in the St. Louis City Justice Center (hereinafter "Jail" or "Justice Center").

McNealy was an inmate in the St. Louis City Justice Center confined on a misdemeanor

charge.  McNealy has a history of suffering from a variety of mental and emotional

disorders, including ADD, ODHD, depression and anxiety, which were known to the

Defendant City of St. Louis and for which they had in the past confined him in a special

needs unit.  On July 2, 2022, at approximately 7:40 p.m., McNealy was placed into cell

#34 at the PAH Male Housing Unit with another inmate by the name of Andy Watson

(hereinafter "Watson").  Watson was known to the Defendants as a problem inmate with

a history of violence and the St. Louis City Justice Center had designated him as an

1

inmate that should not be housed with other inmates due to his violent propensities. On July 2, 2022, McNealy was placed into Cell #34 in the PAH Male Housing Unit, together with Watson. Shortly thereafter, a verbal argument broke out between the two inmates. The St. Louis City Justice Center correctional officer that was on duty and responsible for monitoring the housing pod, including Cell #34, was Defendant Jaclyn Rattler. Both McNeally and Watson requested that C.O. Rattler separate them as they had gotten into an argument and both felt they should be separated before the situation escalated into a physical altercation. C.O. Rattler ignored their requests and took no further action to resolve the situation. This resulted in Andy Watson violently beating McNealy unconscious. Watson then proceeded to stomp and kick the head of McNealy while his unconscious body lay on the cell floor. McNealy sustained massive head injuries, including a traumatic brain injury. McNeally was hospitalized at St. Louis University Hospital from July 2nd, 2022 until October 19th, 2022, during which time he was intubated and on a ventilator, in a coma, and had a prolonged stay in the ICU due to the severity of his traumatic brain injury. He was then sent to a step down facility for intensive in-patient rehabilitation until he was discharged home three months later on January 20th, 2023. Matthew McNealy has suffered a permanent and disabling brain injry that has left him with cognitive and motor deficits that he will have to live with for the rest of his life.

## PARTIES

1.   The Plaintiff Matthew McNealy is an individual who is a resident of the City of St. Louis.

2.   The Defendant City of St. Louis, Missouri, is a political subdivision of the

2

State of Missouri and organized as a constitutional charter city under Article VI, §19 of the Missouri Constitution. The City of St. Louis is the public entity responsible for management, staffing and oversight of the City Justice Center through the Division of Corrections which in turn is a subdivision of St. Louis City's Department of Public Safety.

3.   The Defendant Jennifer Clemons-Abdullah (hereinafter "JCA") is the Superintendent of the City Justice Center and is being sued in her individual and official capacity. The Defendant Clemons-Abdullah is charged with setting policies and guidelines for the City Justice Center and manages and enforces the detention of individuals housed at the City Justice Center. At all times relevant to this litigation, the Defendant Clemons-Abdullah was responsible for hiring, training and supervising all correctional officers at the City Justice Center, for setting jail policies and for ensuring the health, safety and welfare of all inmates detained at the City Justice Center. At all times relevant to the facts and claims herein, Defendant Clemons-Abdullah was operating under the color of law and within the scope of her employment with the Defendant City of St. Louis.

4.   The Defendant Jaclyn Rattler (hereinafter "Rattler") is an individual who at all times relevant herein was employed by Co-defendant City of St. Louis as a Correctional Officer and was working at the St. Louis City Justice Center in her capacity as a Correctional Officer. Upon information and belief, C.O. Rattler was and is a resident of the State of Missouri.

3

## JURISDICTION AND VENUE

5.      The present case involves claims for violations of Matthew McNealy's civil rights as secured by the Constitutions of the United States and the State of Missouri, cognizable pursuant to 42 U.S.C. §1983 et seq., as well as Missouri state law, including claims for negligence. All of the actions complained of herein occurred within the City of St. Louis, State of Missouri.

## GENERAL ALLEGATIONS

6.  On July 2, 2022, McNealy was incarcerated in the St. Louis City Justice Center on a misdemeanor count of domestic violence.

7.  Plaintiff suffers from emotional and mental issues which were known to the Defendant City of St. Louis.  The Defendant City of St. Louis had in the past segregated Plaintiff from the general inmate population and confined him on a "Special Needs Unit".

8.  Watson was also an inmate at the St. Louis City Justice Center in July of 2022 and was known to the City of St. Louis to be a violent inmate.  In fact, the City had standing orders which dictated that Watson was not to be housed with other inmates due to his propensity to engage in violent acts against other inmates.

9.  On the evening of July 2, 2022, Defendant C.O. Rattler was the Correctional Officer that was assigned to the PAH Male Housing Unit on the floor that included cell #34.

10.  At that time and place, McNealy was being confined in the PAH Male Housing Unit in Cell #34.  Watson was also being housed with McNealy in the same cell in violation of the City Justice Center's own standing orders and guidelines.

11.  Around 7:00 p.m. that evening, McNealy and Watson got into a verbal

4

argument. Both inmates told C.O. Rattler that they wanted to be separated due to the argument they were having and their fear that it could escalate into a physical altercation.

12. C.O. Rattler and other inmates had heard the repeated pleas of McNealy, as well as Watson, to be separated.

13. C.O Rattler took absolutely no actions in response to these requests despite hearing the pleas for help. C.O. Rattler failed to respond to Cell #34 to investigate the verbal altercation that she could hear taking place. C.O. Rattler also failed to summon help from other correctional officers or advise her superiors or other correctional officers of the volatile situation.

14. After a period of time without response, inmate Watson began to beat McNealy violently. Watson punched McNealy in the face and knocked him unconscious. As McNealy lay unconscious on the cell floor, Watson proceeded to repeatedly kick him and stomp him in the head causing massive injuries throughout his body, head and brain.

15. At no time during this physical altercation did C.O. Rattler engage with the inmates in any manner whatsoever. She failed to give verbal commands for them to stop, she failed to respond to the cell or make herself physically present to the inmates, she failed to summon for help and she failed to advise her supervisors or other correctional officers of the situation despite having actual knowledge that an altercation was taking place.

16. Only sometime later, after the altercation had been terminated and McNealy lay beaten and unconscious on the cell floor did C.O. Rattler finally put out a radio

broadcast of a correctional officer in need of help. C.O. Rattler failed to request medical assistance for an injured inmate in a timely manner.

17. At that point, other correctional officers responded to the PAH Male Housing Unit and Cell #34 and found C.O. Rattler at her central podium doing paperwork.

18. C.O. Rattler still had not responded to Cell #34 to determine the extent of the altercation or whether anyone had been hurt or was in need of medical assistance.

19. Upon arriving at the scene, the responding Correctional Officers called for medical assistance. It was determined that McNealy had suffered a significant head injury and was in need of immediate medical attention. The responding officers found McNealy's body in an unconscious and hypoxic state.

20. McNealy was taken by ambulance to St. Louis University Hospital where he was hospitalized and put in the Intensive Care Unit where he remained on a respirator in a vegetative state. McNealy was diagnosed with a massive brain injury caused by the violent beating by Watson and was hospitalized from July 2, 2022, until his discharge on October 19, 2022, over three and a half months later. McNealy has suffered a permanent and devastating brain injury which has left him with life changing and catastrophic physical and cognitive impairments. He can no longer walk without assistance, he has neurological and muscular motor deficits, he suffers from balance and coordination issues, he has involuntary muscle spasms that cause violent muscular contractions throughout his body, he can no longer drive, dress himself or use the toilet without assistant and he has incurred a significant and permanent loss of vision. McNealy has also suffered significant injuries to his head, neck, back, torso, and both his upper and lower extremities causing him great pain and limited function. McNealy

6

has incurred hospital, surgical, medical, therapeutic and other health care related expenses and will in the future continue to incur such expenses. McNealy has suffered a past wage loss and will in the future be completely and permanently disabled and unable to engage in any gainful employment. McNealy has suffered great pain of body and anguish of mind which has altered his relationship with his family, friends and peers and left him completely reliant on their assistance and help in order to be able to perform the simplest of his daily living tasks.

21.    All of the acts and omissions of Defendants Rattler and JCA, as described herein were done within the course and scope of their employment for the Defendant City of St. Louis and for which the City of St. Louis is responsible under the Doctrine of Respondeat Superior.

## COUNT I

### (Negligence - City of St. Louis)

COMES NOW Plaintiff, and for his cause of action against the Defendant City of St. Louis, states as follows:

22. Plaintiff incorporates by reference paragraphs 1 through 21 of this Petition as if fully set forth herein.

23. In June of 2022, the Defendant City of St. Louis took custody of the person of McNealy and detained him in the St. Louis City Justice Center. The Defendant City of St. Louis owed a duty to McNealy, as it did to all inmates housed at the St. Louis City Justice Center, to detain him in such a manner as to keep him safe from all harm from himself, as well as others, and to provide a safe environment for detention where

7

McNealy could be housed without threat or actual harm of physical, mental or emotional abuse.

24. Defendant City of St. Louis, acting through its employees and agents, breached that duty and was otherwise negligent in the following manner:

- a) Defendant failed to properly screen and assess the mental health condition of McNealy so as to identify any medical, mental or emotional health issues that may have indicated he required a heightened level of security, segregation from the general inmate population or placement on a special needs unit;

- b) Defendant allowed McNealy to be housed with a known violent inmate in the form of Watson, who this Defendant knew, or should have known, had a history of violent behavior and physical altercations with other inmates, and that housing him with another inmate such as Watson could result in physical harm to McNealy;

- c) Defendant violated its own internal standing orders and guidelines by housing a known violent offender, Watson, with another inmate in the form of McNealy;

- d) Defendant failed to respond to McNealy and other inmates' calls for help and request to be separated from a known violent offender in the form of Watson;

- e) Defendant failed to attempt to intervene once they knew, or should have known, that McNealy was being assaulted and beaten by another inmate;

8

f)  Defendant failed to call, request help or notify other correctional officers of the fact that there was a potentially volatile situation between two inmates or that a physical altercation had broken out and that help was needed;

g)  Defendant failed to move from her station at the podium and investigate the verbal argument or physical altercation that was taking place between McNealy and Watson;

h)  Defendant failed to provide timely and adequate medical care to Plaintiff when he was clearly in need of emergency medical care;

i)  Defendant failed to adopt and implement appropriate policies, procedures and guidelines regarding the assessment and detention of inmates who have violent tendencies which would cause them to present a risk of harm to other inmates, and what steps or procedures are to be followed by correctional officers when confronted with a potentially volatile situation between inmates or an actual verbal or physical altercation between inmates;

j)  Defendant failed to train or educate their staff and correctional officers with respect to how to safely and appropriately handle potentially volatile confrontations between inmates, verbal arguments between inmates or actual physical altercations between inmates;

k)  Defendant failed to appropriately screen, hire, train, supervise and discipline its correctional officers and other employees which

9

resulted in the employment of various correctional officers, including C.O. Rattler, who were not qualified to care for inmates, especially those with violent tendencies such as those displayed by Watson and who presented a danger to other inmates including McNealy;

l)     As a matter of policy and practice, this Defendant undertook inadequate and defective internal investigations into the actions of correctional officers and other jail employees, such that the employees and staff of the St. Louis City Justice Center were encouraged to believe that their actions would not be subject to scrutiny, which in turn encouraged a pattern of future abuses such as those that befell McNealy;

m)    As a matter of policy and practice, the Defendant showed a deliberate and callous indifference and blatant disregard for the health, safety and welfare of its inmates by encouraging the very type of misconduct at issue in the present case, by failing to adequately train, supervise, discipline and control its correctional officers and employees, as well as hiring and retaining officers without adequate background checks, and demonstrated a deliberate and callous indifference to the fact that such individuals were not qualified to work as correctional officers due to their lack of experience and training in handling inmates or physical or verbal altercations between inmates;

10

n)  As a matter of both policy and practice, the Defendant failed to adequately punish and discipline prior instances of similar misconduct by its correctional officers, including the Defendant C.O. Rattler, thereby leaving correctional officers and jail personnel to believe that their actions would never be scrutinized or that they would not be held accountable for their actions and in that way essentially encouraged future abuses such as those which befell McNealy;

o)  The policymakers and employees of the Defendant City of St. Louis Justice Center are aware of, condone and facilitate the type of behavior that befell McNealy by showing a deliberate and callous indifference or reckless disregard for the actions of its employees, and by their inactions have adopted a "code of silence" within the St. Louis City Justice Center by which employees failed to report misconduct committed by other correctional officers and employees;

p)  Generally, as a matter of widespread practice so as to comprise a de facto St. Louis City policy, correctional officers at the St. Louis City Justice Center failed to appropriately monitor and segregate the inmates, creating a volatile atmosphere within the City Jail where inmates with violent propensities are able to prey upon and victimize other inmates such as what occurred in this case and Defendants failed to engage in adequate investigations and made

11

findings of wrongdoing in a disproportionately small number of cases; and

q)    Defendant has failed to act to remedy the pattern of abuse between inmates as described in this Petition despite actual or constructive knowledge of the same, thereby causing the type of injuries as McNealy has suffered in this case.

25.    The Defendant's acts and omissions, as outlined above, were the direct and proximate cause of the catastrophic physical, emotional and mental trauma to McNealy, which has resulted in a permanent and catastrophic brain injury and has left him permanently and forever disabled, as more fully described above.

26.    Upon information and belief the Defendant, City of St. Louis has purchased liability insurance that would provide coverage to it and its employees for the claims being made by Plaintiff. In addition, the Defendant City of St. Louis also funds its liability coverage through an insurance program run by the Public Facilities Protection Corporation "PFPC", a nonprofit corporation funded by the city of St. Louis to insure the City and its employees from liability for claims such as those being made by Plaintiff. Either or both of these insuring arrangements by the City would waive any claim of sovereign immunity pursuant to RsMO §537.610.1.

WHEREFORE, for Count I of this Petition directed to the Defendant City of St. Louis, McNealy prays for damages in a fair and reasonable sum in excess of $10,000,000.00 and for such other and further relief as this Court deems just and proper.

## COUNT II

### (Negligence - Jennifer Clemons-Abdullah)

COMES NOW Plaintiff, and for his cause of action against the Defendant Jennifer Clemons-Abdullah ("JCA"), states as follows:

27.   Plaintiff incorporates by reference paragraphs 1 through 21 of this Petition as if fully set forth herein.

28.   In June of 2022, the Defendant City of St. Louis took custody of the person of McNealy and detained him in the St. Louis City Justice Center.  The Defendant JCA, as the Superintendent of the City Justice Center, had responsibility for setting policies and guidelines for the City Justice Center and was ultimately responsible for the supervision and disciplining of City Justice Center staff.  The Defendant JCA owed a duty to McNealy, as she did to all inmates housed at the St. Louis City Justice Center, to detain him in such a manner as to keep him safe from all harm and to provide a safe environment for detention where McNealy could be housed without threat or actual harm of physical, mental or emotional abuse.

29.   Defendant JCA, acting through its employees and agents, breached that duty and was otherwise negligent in the following manner:

     a)   Defendant failed to properly screen and assess the mental health condition of McNealy so as to identify any medical, mental or emotional health issues that may have indicated he required a heightened level of security or placement on a special needs unit;

     b)   Defendant allowed McNealy to be housed with a known violent inmate in the form of Watson who this Defendant knew, or should

have known, had a history of physical altercations with other
inmates or other acts of violence and that housing him with another
inmate such as Watson could result in physical harm to McNealy;

c)     Defendant violated its own internal guidelines and protocols by
housing a known violent offender such as Watson with another
inmate in the form of McNealy;

e)     Defendant failed to adopt and implement appropriate policies,
procedures and guidelines regarding the assessment and detention
of inmates who have violent tendencies which would cause them to
present a risk of harm to other inmates, and what steps or
procedures are to be followed by correctional officers when
confronted with a potentially volatile situation between inmates or
an actual verbal or physical altercation between inmates;

f)     Defendant failed to train or educate her staff and correctional
officers with respect to how to safely and appropriately handle
potentially volatile confrontations between inmates, verbal
arguments between inmates or actual physical altercations
between inmates;

g)     Defendant failed to appropriately screen, hire, train, supervise and
discipline Justice Center correctional officers and other employees
which resulted in the employment of various correction officers,
including C.O. Rattler, who was not qualified to care for inmates,
especially those with violent tendencies such as those displayed by

Watson and who presented a danger to other inmates including McNealy;

h)     As a matter of policy and practice, this Defendant undertook inadequate and defective internal investigations into the actions of correctional officers and other jail employees, such that the employees and staff of the St. Louis City Justice Center were encouraged to believe that their actions would not be subject to scrutiny, which in turn encouraged a pattern of future abuses such as those that befell McNealy;

i)     As a matter of policy and practice, the Defendant showed a deliberate and callous indifference and blatant disregard for the health, safety and welfare of its inmates by encouraging the very type of misconduct at issue in the present case by failing to adequately train, supervise, discipline and control its correctional officers and employees, as well as hiring and retaining officers without adequate background checks, and demonstrated a deliberate indifference to the fact that such individuals were not qualified to be correctional officers due to their lack of experience and training in handling inmates or physical or verbal altercations between inmates;

j)     As a matter of both policy and practice, the Defendant failed to adequately punish and discipline prior instances of similar misconduct by its correctional officers, including the Defendant

15

C.O. Rattler, thereby leaving correctional officers and jail personnel to believe that their actions would never be scrutinized or that they would not be held accountable for their actions and in that way essentially encouraged future abuses such as those which befell McNealy;

k)   This Defendant is aware of, condones and facilitates the type of behavior that befell McNealy by showing a deliberate and callous indifference or reckless disregard for the actions of Justice Center employees, and by her inactions has adopted a "code of silence" within the St. Louis City Justice Center by which employees failed to report misconduct committed by other correctional officers and employees;

l)   Generally, as a matter of widespread practice so as to comprise a de facto St. Louis City policy, correctional officers at the St. Louis City Justice Center failed to appropriately monitor and segregate the inmates creating a volatile atmosphere within the City Jail where inmates with violent propensities are able to prey upon and victimize other inmates such as what occurred in this case and Defendants failed to engage in adequate investigations and made findings of wrongdoing in a disproportionately small number of cases; and

m)   Defendant has failed to act to remedy the pattern of abuse between inmates as described in this Petition despite actual or constructive

knowledge of the same, thereby causing the type of injuries as McNealy has suffered in this case.

30. The Defendant's acts and omissions, as outlined above, were the direct and proximate cause of the catastrophic physical, emotional and mental trauma to McNealy which has resulted in a permanent and catastrophic brain injury and has left him permanently and forever disabled, as more fully set forth above.

31.     Upon information and belief the Defendant, JCA, is insured through a liability insurance policy that would provide coverage to her for the claims being made by Plaintiff. In addition, the Defendant also has liability coverage through an insurance program run by the Public Facilities Protection Corporation "PFPC", a nonprofit corporation funded by the city of St. Louis to insure the City and its employees from liability claims such as those being made by Plaintiff. Either or both of these insuring arrangements by the Defendant JCA would waive any claim of sovereign or official immunity pursuant to RsMO §537.610.1.

WHEREFORE, for Count II of this Petition, directed to the Defendant JCA, McNealy prays for damages in a fair and reasonable sum in excess of $10,000,000.00 and for such other and further relief as this Court deems just and proper.

## COUNT III

### (Negligence - Jaclyn Rattler)

COMES NOW Plaintiff, and for his cause of action against the Defendant Jaclyn Rattler ("Rattler"), states as follows:

32. Plaintiff incorporates by reference paragraphs 1 through 21 of this Petition as if fully set forth herein.

33. In June of 2022, the Defendant City of St. Louis took custody of the person of McNealy and detained him in the St. Louis City Justice Center where co-defendant Rattler was employed by the City as a correctional officer. The Defendant C.O. Rattler owed a duty to McNealy to detain him in such a manner as to keep him safe from all harm and to provide a safe environment for detention where McNealy could be housed without threat or actual harm of physical, mental or emotional abuse.

34. Defendant Rattler breached that duty and was otherwise negligent in the following manner:

a) Defendant failed to properly screen and assess the mental health condition of McNealy so as to identify any medical, mental or emotional health issues that may have indicated he required a heightened level of security or placement on a special needs unit;

b) Defendant allowed McNealy to be housed with a known violent inmate in the form of Watson who this Defendant knew, or should have known, had a history of physical altercations with other inmates or other acts of violence and that housing him with another inmate such as Watson could result in physical harm to McNealy;

c) Defendant violated the Justice Center's internal guidelines and protocols by housing a known violent offender such as Watson with another inmate in the form of McNealy;

d) Defendant failed to respond to McNealy and other inmates' calls for help and requests to be separated from a known violent offender in the form of Watson;

18

e)   Defendant failed to attempt to intervene once she knew, or should
     have known, that McNealy was being threatened or assaulted and
     beaten by another inmate;

f)   Defendant failed to call, request help or notify other correctional
     officers of the fact that there was a potentially volatile situation
     between two inmates or that a physical altercation had broken out
     and that help was needed;

g)   Defendant failed to move from her station at the podium and
     investigate the verbal argument or physical altercation that was
     taking place between McNealy and Watson;

h)   Defendant failed to provide timely and adequate medical care to
     Plaintiff when he was clearly in need of emergency medical care;
     and

i)   Defendant was otherwise negligent in the performance of her duties
     as a correctional officer.

35.   Upon information and belief the Defendant, Rattler is insured through a
liability insurance policy that would provide coverage to her for the claims being made
by Plaintiff. In addition, the Defendant also has liability coverage through an insurance
program run by the Public Facilities Protection Corporation "PFPC", a nonprofit
corporation funded by the city of St. Louis to insure the City and its employees from
liability claims such as those being made by Plaintiff. Either or both of these insuring
arrangements by the Defendant JCA would waive any claim of sovereign or official
immunity pursuant to RsMO §537.610.1.

19

36. The Defendant's acts and omissions, as outlined above, were the direct and proximate cause of the catastrophic physical, emotional and mental trauma to McNealy which has resulted in a permanent and catastrophic brain injury and has left him permanently and forever disabled, as more fully set forth above.

WHEREFORE, for Count III of this Petition, directed to the Defendant Rattler, McNealy prays for damages in a fair and reasonable sum in excess of $10,000,000.00 and for such other and further relief as this Court deems just and proper.

## COUNT IV

## (42 U.S.C. §1983 – Failure to Screen, Train, Staff, Supervise, Control & Discipline)

Comes now, Plaintiff Matthew McNealy, and for his cause of action against the Defendants, City of St. Louis, Jennifer Clemons Abdullah and Jaclyn Rattler under 42 USC Section 1983 et seq. hereby states as follows:

37. Plaintiff hereby incorporates by reference as if fully set forth herein 1-36 of this petition.

38.     This Count is brought pursuant to 42 U.S.C. §1983 and the Fourth, Eight, and Fourteenth Amendments to the United States Constitution in that Matthew McNealy was deprived of his Constitutional rights by being denied life and liberty without due process of law and by being subject to cruel and unusual punishment as well as other Constitutional violations due to the Defendants' failure to properly screen, train, staff, supervise, control and discipline its employees.

39.     All of the actions of all three Defendants as set out in this petition were carried out under the color of law and for the purpose of willfully depriving Matthew McNealy of his rights as set out in the U.S. Constitution, the Missouri Constitution and

under Missouri State law. Furthermore, the actions of Defendants JCA and Rattler were carried out in the course and scope of their employment for the Defendant City of St. Louis.

40.     The Defendants had a duty to the inmates they incarcerated at the Justice Center to appropriately staff the Jail with sufficient and competent personnel who had the requisite training, experience and background to ensure a safe environment for incarceration where the inmates would be free from unreasonable dangers of physical harm from other inmates.

41.     The Defendants, acting under the color of law, participated in establishing policies, protocols, customs and guidelines to hire, screen, train, supervise, control and discipline, the employees and contractors working at the Justice Center, which included correctional officers such as defendant Rattler.

42.     These policies, protocols, customs and guidelines were inadequate or non-existent, as to the training and education of Justice Center employees, resulting in employees, including correctional officers, that posed a dangerous proclivity to violate the Constitutional rights of the inmates and were woefully unprepared as to:

a) how to appropriately and safely house inmates who may be suffering from mental or emotional health conditions or other "special needs" inmates;

b) how to appropriately and safely identify, screen and house inmates who demonstrate a danger or threat to the physical wellbeing of other inmates;

c) how to appropriately and safely segregate their inmate population;

d) how to appropriately intervene in altercations, whether verbal or physical, between inmates;

21

e) what actions to take when inmates ask to be separated;

f) how to react and intervene to physical or verbal altercations between inmates so as to ensure their safety and well being and minimize any risk of physical harm;

g) how and when to call for assistance when faced with an urgent situation that threatens the health, safety and welfare of an inmate.

43. These policies, protocols, customs and guidelines were inadequate or non-existent, as to the hiring and screening of prospective employees of the Justice Center, resulting in correctional officers working at the Justice Center that did not have the emotional, psychological, physical or mental capacity to be able to appropriately react to urgent situations within the Jail that threatened the physical welfare of inmates and, thereby, presented a dangerous proclivity to the health, safety and welfare of the inmates.

44. These policies, protocols, customs and guidelines were inadequate or non-existent, as to the supervision, control and discipline of Justice Center employees resulting in an environment at the Justice Center where violations of the Constitutional rights of inmates were tolerated and so widespread so as to constitute either an official policy of the City of St. Louis or an unofficial custom that such Constitutional violations of the rights of inmates would be allowed and tolerated. The deliberate indifference of the Defendants to the ongoing, widespread and persistent pattern of Constitutional violations constituted a de facto unofficial custom and tacit authorization that such conduct was acceptable and tolerated.

22

45. The Defendants created this unofficial custom and tacit authorization of Constitutional violations through their actions as set forth above as well as the following acts and omissions:

a) as a matter of both policy and practice the Defendants would undertake defective and inadequate investigations of reports of employee's failure to appropriately handle inmate altercations or threats of violence, thereby, creating and contributing to the perception amongst employees of the Justice Center that such failures would be tolerated and go unpunished;

b) as a matter of both policy and practice the Defendants would routinely engage in Constitutional violations of the rights of inmates, such as those suffered by Matthew McNealy, yet make findings of wrongdoing by its employees in a disproportionately small number of cases. This resulted in the creation of an environment where the correctional officers believed they would not be held to account for their conduct and that their Constitutional violations of inmate rights would go unquestioned and unpunished.

c) as a matter of both policy and practice, the Defendants encouraged the very type of incompetence and misconduct at issue in the present case, by failing to adequately punish and discipline prior instances of similar incompetence and misconduct, thereby leading correctional officers to believe that their actions would never be scrutinized or that they would not be held accountable for their actions, and in that way, encouraged and facilitated further abuses as those that befell Matthew McNealy.

23

d) as a matter of both policy and practice, the Defendants, together with other unnamed St. Louis City policy makers, are aware of and condone by their inaction a "code of silence" within the Justice Center by which correctional officers and other employees fail to report incompetence and misconduct committed by other employees;

e) as a matter of practice and policy the Defendants would routinely understaff the Justice Center with sufficient correctional officers to ensure the safety of its inmate population and Matthew McNealy in particular;

f) as a matter of policy and practice, the Defendants have failed to act to remedy the patterns of abuse, misconduct and incompetence described in the preceding paragraphs, despite actual or constructive knowledge of the same, and, thereby, have institutionalized such conduct into the culture of the Justice Center and, thereby, have created an informal policy and tacit authorization for such behavior.

46.    The Defendants' actions as described above, all carried out under the color of law, demonstrated a callous and deliberate indifference to the Constitutional rights and physical welfare of the inmates of the Justice Center and were carried out with a reckless disregard to health, safety and welfare of Matthew McNealy and the other inmates housed at the Justice Center.

47.    The Defendants' actions as described above were the direct and proximate cause of the catastrophic and permanent injuries and damages suffered by Matthew McNealy and more fully described above.

WHEREFORE, for Count IV of this Petition directed to all of the Defendants, McNealy prays for damages in a fair and reasonable sum in excess of $10,000,000.00, for his attorneys fees and costs as provided for under 42 U.S.C. §1988, and for such other and further relief as this Court deems just and proper.

<strong><u>COUNT V</u></strong>

<strong><u>(42 U.S.C. §1983 – Cruel and Unusual Punishment)</u></strong>

Comes now, Plaintiff Matthew McNealy, and for his cause of action against the Defendants, City of St. Louis, Jennifer Clemons Abdullah and Jaclyn Rattler under 42 USC Section 1983 et seq. hereby states as follows:

48. Plaintiff hereby incorporates by reference as if fully set forth herein 1-47 of this petition.

49. This Count is brought pursuant to 42 U.S.C. §1983 and the Fourth, Eight, and Fourteenth Amendments to the United States Constitution in that Matthew McNealy was deprived of his Constitutional rights in that he was subjected to cruel and unusual punishment as well as other Constitutional violations by the Defendants' misconduct, abuse and incompetence.

50. On the date in question Matthew McNealy was incarcerated in the Justice Center on a misdemeanor charge that according to Missouri law carried a maximum penalty of one year incarceration.

51. Through the actions and omissions of the Defendants, Matthew McNealy was subject to a merciless beating at the hands of another inmate while confined, which put him in a ventilator dependent vegetative state and resulted in a prolonged

hospitalization in the ICU, a massive traumatic brain injury and permanent and catastrophically disabling injuries.

52.     All of the actions of all three Defendants as set out in this petition were carried out under the color of law and for the purpose of willfully depriving Matthew McNealy of his rights as set out in the U.S. Constitution, the Missouri Constitution and under Missouri State law. Furthermore, the actions of Defendants JCA and Rattler were carried out in the course and scope of their employment for the Defendant City of St. Louis.

53.     The Defendants had a duty to the inmates they incarcerated at the Justice Center to appropriately staff the Jail with sufficient and competent personnel who had the requisite training, experience and background to ensure a safe environment for incarceration where the inmates would be free from unreasonable dangers of physical harm from other inmates.

54.     The Defendants, acting under the color of law, created an institutional culture at the Justice Center where the physical abuse of inmates was tolerated and condoned.

55.   The Defendants created an environment at the Justice Center where the actions and omissions of correctional officers that resulted in cruel and unusual punishment to the inmates, including physical beatings from other inmates such as that which befell Mathew McNealy, were tolerated and so widespread so as to constitute either an official policy of the City of St. Louis or an unofficial custom that such Constitutional violations of the rights of inmates would be allowed and tolerated. The deliberate indifference of the Defendants to the ongoing, widespread and persistent

pattern of Constitutional violations constituted a de facto unofficial custom and tacit authorization that such conduct was acceptable and tolerated.

56. The Defendants created this unofficial custom and tacit authorization of Constitutional violation through their actions as set forth above in the preceding paragraphs.

57. The Defendants' actions, all carried out under the color of law, demonstrated a callous and deliberate indifference to the Constitutional rights and physical welfare of the inmates of the Justice Center and were carried out with a reckless disregard to health, safety and welfare of Matthew McNealy and the other inmates housed at the Justice Center.

58. The Defendants' actions and omissions, as described above, were the direct and proximate cause of the catastrophic and permanent injuries and damages suffered by Matthew McNealy and more fully described above.

WHEREFORE, for Count V of this Petition directed to all of the Defendants, McNealy prays for damages in a fair and reasonable sum in excess of $10,000,000.00, for his attorneys fees and costs as provided for under 42 U.S.C. §1988, and for such other and further relief as this Court deems just and proper.

## **COUNT VI**

## **(42 U.S.C. §1983 – Deprivation of Medical Care)**

Comes now, Plaintiff Matthew McNealy, and for his cause of action against the Defendants, City of St. Louis, Jennifer Clemons Abdullah and Jaclyn Rattler under 42 USC Section 1983 et seq. hereby states as follows:

59. Plaintiff hereby incorporates by reference as if fully set forth herein 1-58 of this petition.

60.    This Count is brought pursuant to 42 U.S.C. §1983 and the Fourth, Eight, and Fourteenth Amendments to the United States Constitution in that Matthew McNealy was deprived of his Constitutional rights in that he was deprived of urgent and necessary medical care as well as other Constitutional violations by the Defendants' misconduct, abuse and incompetence.

61.    On the date in question Matthew McNealy was an inmate at the Justice Center being held on a misdemeanor charge and, due to his incarcerated status, was unable to summon outside medical help for himself and was completely reliant on the Defendants and their employees and agents to provide to him any medical care he may have needed.

62.    Through the actions and omissions of the Defendants, Matthew McNealy was subject to a merciless beating at the hands of another inmate while confined, which put him in a ventilator dependent vegetative state and resulted in a prolonged hospitalization in the ICU, a massive traumatic brain injury and permanent and catastrophically disabling injuries.

63    It should have been patently obvious to Defendants and their employees that Matthew McNealy was suffering from a significant and urgent injury which required immediate medical attention.

64.    As a result of the physical assault Matthew McNealy had been rendered unconscious and was completely unable to communicate or take any action on his own behalf.  As an inmate at the Justice Center he was wholly reliant on the Defendants and

their employees to provide urgent emergency medical assistance or to call for help so that Matthew could be provided with such medical assistance.

65. The Defendants had a duty to Matthew McNealy and the other inmates they incarcerated at the Justice Center, to have staff appropriately trained and capable of rendering emergency medical care to an inmate suffering from a serious, life threatening injury, or at the very least to be trained and capable as to how to summon qualified medical help for an inmate with such an injury.

66. The Defendants delayed in providing Matthew McNealy with urgently needed medical care and delayed in summoning the help of qualified individuals who could have provided such medical care.

67. The Defendants did not have adequate policies and procedures in place as to how to provide medical assistance to an inmate with immediate emergency medical needs or how to summon qualified medical help.

68.. The Defendants created an environment at the Justice Center where the actions and omissions of correctional officers that resulted in denial of necessary medical care to inmates was tolerated and so widespread so as to constitute either an official policy of the City of St. Louis or an unofficial custom that such Constitutional violations of the rights of inmates would be allowed and tolerated. The deliberate and callous indifference of the Defendants to the ongoing, widespread and persistent pattern of Constitutional violations, including the denial of needed medical care, constituted a de facto unofficial custom and tacit authorization that such conduct was acceptable and tolerated.

69. The Defendants created this unofficial custom and tacit authorization of Constitutional violations through their actions and inactions as set forth above in the preceding paragraphs.

70. The Defendants' actions and omissions in failing to provide medical help or summon help were done under the color of law and demonstrated a callous and deliberate indifference and conscious disregard to the health, safety and welfare of Matthew McNeally.

71. Defendants' actions and omissions as described above were a violation of his Constitutional rights under the United States and Missouri constitutions.

72. The Defendants' actions and omissions, as described above, were the direct and proximate cause of the catastrophic and permanent injuries and damages suffered by Matthew McNealy and more fully described above.

WHEREFORE, for Count VI of this Petition directed to all of the Defendants, McNealy prays for damages in a fair and reasonable sum in excess of $10,000,000.00, for his attorneys fees and costs as provided for under 42 U.S.C. §1988, and for such other and further relief as this Court deems just and proper.

FERNANDEZ LAW, LLC

/s/ Gonzalo Fernandez

GONZALO FERNANDEZ, #40246
Attorney for Plaintiff
133 South 11th Street
Suite 350
St. Louis, MO 63102

(314) 621-1252
Fax:  (314) 621-5705
gonz@stltriallawyers.com