UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MATTHEW MCNEALY, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:24-cv-00583-JAR |
| CITY OF ST. LOUIS, MISSOURI, et al., | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' motion to dismiss for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff Matthew McNealy was confined in the St. Louis City Justice Center on a misdemeanor when he was brutally beaten by a fellow inmate. He filed this lawsuit against the City of St. Louis, Corrections Commissioner Jennifer Clemons-Abdullah, and Corrections Officer Jaclyn Rattler asserting claims of state law negligence and violations of his federal civil rights. For the reasons set forth below, Defendants' motion will be granted in part and denied in part.

**BACKGROUND**

Plaintiff alleges the following facts in his complaint. Plaintiff has a history of mental and emotional disorders, for which the City had previously confined him in a special needs unit. Another inmate, Andy Watson, had a history of violence such that the City had designated him to be segregated from other inmates. Despite this standing order, at some point Plaintiff was placed in a cell with Watson.

On July 2, 2022, Officer Rattler was on duty monitoring the housing unit when Plaintiff and Watson began to argue. They called out to Rattler to separate them before the situation

escalated, but Rattler ignored them.  Watson then proceeded to beat, kick, and stomp Plaintiff in the head and body to the point of unconsciousness and hypoxia. Rattler did not respond to the cell but eventually issued a radio broadcast for officer assistance.  She did not call for medical assistance.  Other officers responded and found Rattler at her podium doing paperwork. Upon arrival to the cell, the responding officers called for medical assistance. Plaintiff was taken to the hospital, where he was diagnosed with a massive brain injury and placed on a respirator in a vegetative state in the intensive care unit.  He spent over three months in the hospital and suffered permanent physical and cognitive impairments.  He has significant vision loss and severe neurological and motor deficiencies such that he cannot walk, dress, or use the toilet without assistance. He also sustained injuries to his spine, torso, and extremities, causing pain and functional limitations.

Plaintiff originally filed this lawsuit in state court asserting state law negligence claims against each Defendant (Counts I-III) and federal claims under 42 U.S.C. § 1983 against all Defendants for failure to train and supervise (Count IV), cruel and unusual punishment (Count V), and deprivation of medical care (Count VI). (Doc. 10). As relevant to these claims, Plaintiff pleaded the following factual allegations (paraphrased for brevity).

Negligence Claims (Counts I-III)
- Defendants failed to assess Plaintiff's mental health to identify any need for heightened security.
- Defendants housed Plaintiff with Watson when they knew or should have known of Watson's history of violence against other inmates, in violation of internal protocols.
- Defendants failed to respond to Plaintiff's and other inmates' calls for help to be separated from Watson.
- Defendants failed to investigate or intervene once they knew or should have known that Plaintiff was being assaulted.
- Defendants failed to provide timely and adequate medical care.
- The City and Commissioner failed to adopt and implement appropriate polices, procedures, and guidelines regarding the assessment and detention of violent inmates and

2

- failed to train staff how to handle volatile or violent altercations between inmates.
- The City and Commissioner failed to appropriately screen, hire, train, supervise, and discipline officers, resulting in the employment of unqualified officers such as Rattler.
- As a matter of policy and practice, the City and Commissioner undertook inadequate and ineffective internal investigations such that officers were free from scrutiny, thus enabling a pattern of abuse.
- As a matter of policy and practice, the City and Commissioner showed deliberate indifference and callous disregard for the health and safety of inmates by failing to appropriately screen, train, supervise, and discipline officers and thereby permitting misconduct by unqualified officers.
- As a matter of policy and practice, the City and Commissioner failed to discipline personnel for prior instances of similar misconduct, including by Officer Rattler, leaving them free of scrutiny and thus encouraging future abuses.
- Policymakers and employees of the Justice Center are aware of, condone, and facilitate the misconduct that resulted in Plaintiff's assault and have adopted a code of silence tantamount to deliberate indifference.
- Justice Center officers have a widespread practice, amounting to a *de facto* policy, of failing to monitor and segregate inmates, creating a volatile atmosphere where violent inmates can prey upon others, and Defendants fail to adequately investigate misconduct to remedy the pattern of inmate abuse despite actual or constructive knowledge.
- Upon information and belief, the City has purchased liability insurance that would provide coverage for Plaintiff's claims against Defendants. Additionally, the City has liability coverage through the Public Facilities Protection Corporation (PFPC).

Section 1983 Claims (Counts IV-VI)

- Acting under color of state law, Defendants established policies, protocols, guidelines, and customs to screen, hire, train, supervise, and discipline employees.
- These measures were inadequate or non-existent with respect to training about inmates' civil rights such that officers were unprepared to safely and appropriately house inmates with mental health conditions, house violent inmates, segregate the population, intervene in altercations, and call for assistance when needed.
- These measures were inadequate or non-existent with respect to screening and hiring such that officers were unqualified to handle volatile situations threatening inmate safety.
- These measures were inadequate or non-existent with respect to employee supervision and discipline, creating an environment where the violation of inmates' civil rights was so widespread and tolerated as to constitute a City policy or unofficial custom of deliberate indifference and tacit authorization.
- Defendants' unofficial custom and tacit authorization manifested through the policies and practices enumerated in Plaintiff's negligence counts above.
- Defendants created an institutional culture where the physical abuse of inmates was tolerated and condoned.

3

- Defendants' actions demonstrate a callous and deliberate indifference to inmates' rights and welfare and a reckless disregard for their safety.
- It should have been obvious to Defendants that Plaintiff sustained significant injuries requiring immediate medical attention.  Defendants delayed in providing care or summoning qualified professionals.
- Defendants lacked adequate policies and procedures about providing or summoning medical assistance.
- Defendants created an environment where the denial of care was so tolerated and widespread as to constitute an official policy or unofficial custom tacitly authorizing the violation of inmates' civil rights.
- Defendants' failure to provide prompt medical assistance to Plaintiff demonstrates callous and deliberate indifference and a conscious disregard for Plaintiff's health and safety.

Upon service of the complaint, Defendants removed the case to this Court and filed the present motion to dismiss, asserting various immunity defenses and pleading deficiencies as applicable to each claim.

## LEGAL STANDARD

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. To survive a motion to dismiss for failure to state a claim, the plaintiff's allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The plausibility requirement is satisfied when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *In re SuperValu, Inc.*, 925 F.3d 955, 962 (8th Cir. 2019) (citing *Iqbal* at 678 and *Twombly* at 570). A pleading of labels and conclusions, a formulaic

4

recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice. *Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010) (same).

When ruling on a motion to dismiss, the court must liberally construe a complaint in favor of the plaintiff. *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010). The court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the non-moving party. *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017). However, courts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level. *Id.* (citing *Twombly* at 555). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff has presented "enough facts to state a claim that is plausible on its face." *Id.* (citing *Iqbal* at 678). This is a context-specific task that requires the court to draw on its judicial experience and common sense. *In re Supervalu Inc.*, 925 F.3d at 962 (citing *Iqbal* at 679).

## DISCUSSION

### I. STATE LAW CLAIMS

#### A. Negligence – City of St. Louis (Count I)

In support of Defendants' motion to dismiss Plaintiff's negligence claim against the City, the City asserts its sovereign immunity from suit. "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011). "[I]n the absence of an express statutory exception to sovereign immunity, or a recognized common law exception such as the propriety function and consent exceptions, sovereign immunity is the rule and apples to all suits against public entities." *Church v. Missouri*, 913 F.3d 736, 743 (8th Cir. 2019) (citing *Metropolitan St. Louis Sewer Dist. v City of*

5

*Bellefontaine Neighbors*, 476 S.W.3d 913, 921-22 (Mo. 2016). Sovereign immunity is not an affirmative defense but rather a part of the plaintiff's *prima facie* case. *Bouton v. Missouri*, 2023 WL 402018 at *12 (E.D. Mo. Jan. 2023) (citing *St. John's Clinic, Inc. v. Pulasky Cnty. Ambulance Dist.*, 422 S.W.3d 469, 471 (Mo. App. S.D. 2014). Therefore, "it is incumbent upon a plaintiff who seeks to state a claim for relief to specifically allege facts establishing that an exception applies." *Id*. (citing *Boever v. Special Sch. Dist. Of St. Louis Cnty.*, 296 S.W.3d 487, 491 (Mo. App. E.D. 2009).

Missouri law creates statutory waivers of sovereign immunity for motor vehicle and premises liability claims (Mo. Rev. Stat. § 537.600) and when a political subdivision purchases liability insurance to cover other tort claims. Mo. Rev. Stat. § 537.610.1; *Hammer v. City of Osage Beach*, 318 F.3d 832, 841 (8th Cir. 2003). To overcome immunity by virtue of insurance coverage, a plaintiff must specifically plead facts demonstrating that the claim is covered by the policy and thus is within the exception. *Epps v. City of Pine Lawn*, 353 F.3d 588, 594 (8th Cir. 2003).

In his complaint, Plaintiff pleads that the City purchased liability insurance providing coverage to the City and its employees for his claims. Plaintiff further pleads that the City also has liability coverage through the Public Facilities Protection Corporation, a form of self-insurance covering the City and its employees for claims such as his. Plaintiff asserts that either or both insurance arrangements would constitute a waiver of sovereign immunity under § 537.610.

In their motion to dismiss, Defendants contend that Plaintiff's pleadings are factually insufficient and conclusory. Defendants principally rely on *Torres v. City of St. Louis*, 39 F.4th 494 (8th Cir. 2022), and *Hendrix v. City of St. Louis*, 636 S.W.3d 889 (Mo. App. E.D. 2021). In

6

both cases, the summary judgment record established that the City's PFPC insurance covered only motor vehicle and premises liability claims, and the City carried no other insurance covering other types of tort claims.  Defendants also rely on *Clark v. City of St. Louis*, from this district, where the court summarily granted dismissal at the pleading stage based on the holdings in *Torres* and *Hendrix*. No. 4:21 CV 788 RWS, 2022 WL 4598533, at *10 (E.D. Mo. Sept. 30, 2022).

In response, Plaintiff submits that his pleadings are sufficient to entitle him to discovery on the issue.  He cites *Eisenbach v. City of St. Louis*, also from this district, where the court accepted allegations similar to Plaintiff's as true and denied dismissal, notwithstanding a declaration by the City's lawyer disclaiming the existence of applicable coverage. No. 4:23-CV-462-HEA, 2024 WL 1532294, at *3 (E.D. Mo. Apr. 9, 2024).

Upon consideration of the foregoing cases, the Court declines to dismiss Count I at this stage. *Torres* and *Hendrix* were decided on a summary judgment record, and *Clark* and *Eisenbach* reflect diverging views in this district at the dismissal stage.  Plaintiff explicitly pleads that the City has liability insurance covering his claims and thus waiving sovereign immunity under §537.610.  The evidence before the courts in *Torres* and *Hendrix* is not in the present record at this time, and the Court questions how this Plaintiff's factual assertion could be more specific without discovery. "The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" *Joseph v. Wheeler*, No. 2:19-CV-22 AGF, 2021 WL 1857113, at *4 (E.D. Mo. May 10, 2021) (quoting *Twombly*, 550 U.S. at 556). "A court should not dismiss the complaint simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations." *Riley v. FedEx Corp.*, No. 4:17CV2192 RLW, 2018 WL 2943239, at *1

(E.D. Mo. June 12, 2018) (same).  Mindful of these standards, the Court will deny Defendant's motion to dismiss Count I.

### B. Negligence – Individual Defendants (Counts II & III)

In support of Defendants' motion to dismiss Plaintiff's negligence claims against the Corrections Commissioner and Officer Rattler, these individual Defendants invoke official immunity.  "Under Missouri law, the official immunity doctrine protects public officials from liability for injuries arising out of their discretionary acts or omissions."  *Brandy v. City of St. Louis*, 75 F.4th 908, 917 (8th Cir. 2023).   Official immunity does not apply when a public official (1) fails to perform a ministerial duty required by law or (2) acts in bad faith or with malice. *State ex rel. Love v. Cunningham*, 689 S.W.3d 489, 495 (Mo. 2024).

Plaintiff contends that these individual Defendants had a ministerial duty to obey the standing order not to house Watson with other inmates. But recent Missouri Supreme Court precedent defeats Plaintiff's theory that this duty was ministerial.  In *Love*, a state highway worker was struck and killed by a motorist after her supervisors failed to block the lane with a protective vehicle as required by agency policy.  The plaintiffs argued that the supervisors violated a ministerial duty in that the policy was mandatory and non-discretionary. The Supreme Court rejected this argument, explaining that whether a rule, policy, procedure, or law creates a mandatory duty is not the relevant inquiry.  Rather, it is whether the nature of the act itself is ministerial, *i.e.*, clerical.  *Love*, 689 S.W.3d at 495-496.  Ministerial tasks encompass the "rubber stamp" duties of public officials.  *State ex rel. Morales v. Alessi*, 679 S.W.3d 467, 472 (Mo. 2023) (citing *State ex rel. Fitz-James v. Bailey*, 670 S.W.3d 1, 12 (Mo. 2023), requiring the attorney general to approve the auditor's fiscal note).  If there is any room for variation in how a particular task can be done, then it is not ministerial.  *Id.* at 471. *See also Cady v. City of Malden*,

8

694 S.W.3d 616, 620 (Mo. App. S.D. 2024) (rejecting plaintiffs' argument that escorting an inmate to a cell and monitoring him on video were ministerial acts).  Based on this rationale, the *Love* court concluded that the acts of ensuring placement of a protective vehicle and providing proper training are inherently discretionary.

Consistent with the foregoing reasoning, this Court finds that Defendants' housing and segregation of inmates, whether pursuant to policies, training, or directives, are discretionary acts insofar as they can be performed by various means. Stated differently, the duty to segregate Watson was not rendered ministerial merely by the existence of an order. The nature of the act itself, and how it was to be carried out, remained discretionary.  As such, the individual Defendants are entitled to official immunity unless they acted with bad faith or malice.

In Missouri, bad faith or malice requires an "actual intent to cause injury."  *Wealot v. Brooks*, 865 F.3d 1119, 1129 (8th Cir. 2017).  Bare allegations of bad faith and malice are insufficient; rather, a plaintiff must plead specific facts permitting an inference that the defendants intended to cause harm.  *Love*, 689 S.W.3d at 497.  Official immunity shields a public employee from suit even when an intentional violation of policy amounts to gross negligence or recklessness. *Id*. at 497-98 (contrasting Missouri from other jurisdictions in this regard).

Here, Plaintiff's pleadings with respect to the Commissioner primarily relate to her supervisory role and cannot be construed to allege a personal intent to cause injury.  Even as to Officer Rattler, Plaintiff's pleadings fall short of Missouri's high bar.  At best, Plaintiff alleges that Rattler failed to prevent or interrupt the assault and failed to summon prompt medical attention, in callous and deliberate indifference and conscious disregard for Plaintiff's safety.  But Plaintiff does not allege any specific facts permitting an inference of actual intent to cause harm.  *Compare Jackson v. Rentro*, No. 4:15-CV-01426 AGF, 2020 WL 5569990, at *2 (E.D.

9

Mo. Sept. 17, 2020) (where officers encouraged and enabled one inmate to assault another).[1] Plaintiff does not press this point in his response to Defendants' present motion. Counts II and III must be dismissed.

## II.     FEDERAL CLAIMS

In Counts IV through VI, Plaintiff asserts three separate claims under 42 U.S.C. § 1983: failure to train and supervise (Count IV), cruel and unusual punishment (Count V), and deprivation of medical care (Count VI). Deprivation of medical care is one form of cruel and unusual punishment prohibited by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976). The failure to protect an inmate from violence by other inmates is another. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Given Plaintiff's separation of Counts V and VI, the Court construes the complaint to assert distinct claims for failure to protect or intervene (Count V) and deprivation of medical care (Count VI), both of which invoke Eighth Amendment standards.[2] Though Plaintiff groups all Defendants together in each Count, their distinct roles require different analyses.[3]

### A.  § 1983 – Officer Rattler (Counts IV-VI)

Plaintiff alleges that the City had a standing order not to house Watson with other inmates due to his propensity for violence. Despite that order, Plaintiff was housed with Watson on July 2, 2022, when Officer Rattler was on duty. According to Plaintiff, Rattler heard and

---

[1]     The Court acknowledges that *Jackson* resolved a motion for summary judgment on a full record. However, as relevant here, the underlying complaint in that case specifically alleged that a defendant officer gave the assailant a key enabling him to slip out of his restraints. Case No. 4:15-CV-01426-AGF, Doc. 72 at p. 10. This is the type of factual detail that permits an inference of intent to cause harm, as required by *Love*.

[2]     Plaintiff's brief confirms the Court's interpretation of Count V as a claim for failure to protect. (Doc. 26).

[3]     Should Plaintiff amend his complaint going forward, he must separate his claims against each Defendant to reflect the distinct legal bases and standards for their respective liability.

10

ignored pleas to separate him from Watson, failed to investigate the situation or summon help as it audibly escalated, remained at her post and did nothing while the assault occurred, and only called for officer assistance (but not medical aid) sometime later. Plaintiff specifies that, though Rattler had actual knowledge of the physical altercation taking place, responding officers found Rattler at her podium doing paperwork, having not checked the cell at any point.

Plaintiff's complaint lacks any allegation that Rattler possessed authority giving rise to a claim of failure to train and supervise. Clearly, she was the subordinate officer on duty. As such, Defendant's motion to dismiss Count IV will be granted as to Rattler. On Counts V and VI, Defendants assert that Rattler is entitled to qualified immunity.

Qualified immunity protects officials who act in an objectively reasonable manner, shielding them from liability when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The doctrine is intended to ensure that insubstantial claims are resolved prior to discovery. *Id*. To overcome qualified immunity at the dismissal stage, a plaintiff must plead facts showing that (1) the official violated a constitutional or statutory right and (2) that right was clearly established at the time of the alleged violation. *Watkins v. City of St. Louis*, 102 F.4th 947, 951 (8th Cir. 2024). Because qualified immunity is an affirmative defense, it will be "upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." *Id*.

11

1. <u>Failure to Protect or Intervene (Count V)</u>

The failure to protect a prisoner from a substantial risk of violence, including the failure to intervene to end an assault in progress, violates the Eighth Amendment prohibition on cruel and unusual punishment. *See generally Walton v. Dawson*, 752 F.3d 1109, 1123 (8th Cir. 2014); *Williams v. Mueller*, 13 F.3d 1214, 1216 (8th Cir. 1994). To establish this claim, a plaintiff must show that the prison official was deliberately indifferent to a substantial risk of serious harm. *Walls v. Tadman*, 762 F.3d 778, 782 (8th Cir. 2014) (citing *Farmer*, 511 U.S. at 828). The plaintiff must satisfy both objective and subjective standards, demonstrating that (1) he was incarcerated under conditions posing a substantial risk of serious harm and (2) the defendant was deliberately indifferent to the risk, meaning she knew of the risk and failed to respond reasonably. *Id*.

Viewed in a favorable light, Plaintiff's pleadings and the reasonable inferences therefrom state a plausible claim on this count. The City's standing order signaled Watson's substantial risk of harm to other inmates. Plaintiff's and Watson's repeated calls to Rattler, as their verbal altercation escalated, announced that risk as imminent. Plaintiff alleges that Rattler had actual knowledge of the assault, and his pleadings suggest that Rattler could hear it from her post but failed to react until "sometime later" when she called other officers. Deliberate indifference can be further inferred by Plaintiff's specific pleading that Rattler remained at her podium "doing paperwork" and never checked the cell. These facts permit an inference that Rattler knew of the risk, both before and during the assault, and exhibited deliberate indifference by failing to

respond *at all*, much less reasonably.[4]

As Plaintiff's right to be protected from violence by other inmates was clearly established at the time of this event, Rattler is not entitled to qualified immunity on the face of the complaint. Defendants' motion to dismiss Count V as to Officer Rattler will be denied.

    2. <u>Deprivation of Medical Care (Count VI)</u>

The Eighth Amendment's prohibition on cruel and unusual punishment also protects prisoners from deliberate indifference to serious medical needs. *Smith-Dandrige v. Geanolous*, 97 F.4th 569, 575 (8th Cir. 2024). Deliberate indifference in this context has two components: (1) an objective component requiring the plaintiff to demonstrate an objectively serious medical need and (2) a subjective component requiring the plaintiff to show that the defendant knew of but deliberately disregarded such need. *Id*. A serious medical need is "one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Dadd v. Anoka Cnty.*, 827 F.3d 749, 755 (8th Cir. 2016). "Deliberate indifference is equivalent to criminal-law recklessness, which is 'more blameworthy than negligence,' yet less blameworthy than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate." *Smith-Dandridge*, 97 F.4th at 576 (quoting *Farmer*, 511 U.S. at 839-40).

Viewing the facts and reasonable inferences in a light favorable to Plaintiff, the Court finds that Plaintiff has stated a plausible claim on this count. The complaint alleges that Rattler stood by within audible range while Plaintiff was violently beaten, kicked, and stomped to

---

[4] Relying on *Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998), Defendants assert that housing violent inmates in close quarters is simply the nature of prison, and neither threats nor a history of violence, or even the two together, suffices to place an officer on notice of a substantial risk of harm. But *Jackson* was decided on a summary judgment record showing that the officer investigated the threat, and the two inmates denied that there was any problem. The same was true in *Blades v. Schuetzle*, 302 F.3d 801, 804 (8th Cir. 2002), also cited by Defendants. Here, by contrast, Plaintiff alleges that there was a standing order not to house Watson with other inmates and, rather than assess the escalating situation, Rattler ignored their warnings of imminent violence.

13

hypoxic unconsciousness, suffering massive head and bodily injuries that responding lay officers immediately recognized as requiring emergency medical care. Plaintiff's serious medical need was objectively obvious.

Under the subjective prong, the official must know of and disregard the need. *Davis v. Buchanan Cnty., Mo.*, 11 F.4th 604, 624 (8th Cir. 2021). An actor manifests deliberate indifference by intentionally denying or delaying access to medical care. *Id*. When evaluating whether an actor deliberately disregarded a risk, the court considers "[her] actions in light of the information [she] possessed at the time, the practical limitations of [her] position, and alternative courses of action that would have been apparent to an official in that position." *Letterman v. Does*, 789 F.3d 856, 862 (8th Cir. 2015). Here, Plaintiff specifically alleges that Rattler could hear and thus had actual knowledge of a physical altercation involving an inmate known for violence, yet she did nothing until "sometime later" after it was over.

The Court finds the pleadings sufficient to plausibly suggest that Rattler knew of Plaintiff's need for medical attention and deliberately ignored it. Qualified immunity is intended to protect officials who perform their duties in a reasonable manner. *Harlow*, 457 U.S. at 818; *Pearson*, 555 U.S. at 231. In the Court's view, and accepting the allegations and inferences in Plaintiff's favor, Rattler's refusal to check the cell when she could hear a violent commotion does not enjoy the benefit of immunity at this stage. Defendants' briefing contains no argument in defense of Rattler on this count. As Plaintiff's constitutional right to medical care was clearly established at the time of the incident, Rattler is not entitled to qualified immunity on the face of the complaint. Defendants' motion to dismiss Count VI will be denied as to Officer Rattler.

### B.  § 1983 – Corrections Commissioner (Counts IV-VI)

Plaintiff asserts the same federal claims against the Commissioner: failure to train and supervise (Count IV), failure to protect or intervene (Count V), and deprivation of medical care (Count VI).  To establish the liability of a supervisory defendant in her individual capacity, a plaintiff must allege specific facts of personal involvement in, or direct responsibility for, the constitutional violation.  *Marsh v. Phelps Cnty.*, 902 F.3d 745, 754 (8th Cir. 2018).

Plaintiff imputes most of his allegations to "Defendants" collectively, but the complaint contains no indication that the Commissioner was personally involved in the events of July 2, 2022.[5]  Rather, the pleadings can reasonably be construed to allege that the Commissioner was responsible for the institutional culture enabling Rattler's misconduct.  As such, for purposes of the Court's analysis regarding this individual Defendant, Counts V and VI are subsumed into Plaintiff's Count IV asserting a failure to train and supervise.

A supervisor may be liable under § 1983 if her failure to properly train and supervise the offending employee caused a deprivation of constitutional rights.  *Davis*, 11 F.4th at 624.  However, a supervisor is entitled to qualified immunity unless the plaintiff can show that the supervisor (1) received notice of a pattern of unconstitutional acts by a subordinate and (2) was deliberately indifferent to or authorized those acts.  *Id*.  Allegations of generalized notice are insufficient; the prior instances of misconduct must be similar to the conduct giving rise to liability.  *Id*.

---

[5]  At most, the complaint permits a reasonable inference that the Commissioner had knowledge of the standing order to segregate Watson.

15

As relevant to these standards, Plaintiff's complaint pleads that:

- The Commissioner failed to screen, hire, train, supervise, control, and discipline Justice Center employees such that corrections officers were unprepared to appropriately segregate violent inmates, respond to altercations, and call for assistance.
- The Commissioner's inadequate screening and hiring practices resulted in the staffing of unqualified officers who lacked the capacity to handle urgent situations threatening inmate safety.
- The Commissioner inadequately investigated and sanctioned instances of incompetence or misconduct in the handling of inmate violence such that officers were free of accountability.
- This inadequate supervision, control, and discipline of subordinates resulted in an environment where violations of inmates' rights were tolerated and widespread.
- The Commissioner was aware of and condoned a code of silence about these instances, thus exhibiting tacit authorization of the misconduct, in deliberate indifference to inmate safety.

These allegations, originally filed in state court, do not satisfy applicable federal pleading standards.  A complaint that merely pleads labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice. *Hamilton*, 621 F.3d at 817–18.  Though Plaintiff employs the operable labels, his assertions and conclusions are speculative and lack sufficient factual enhancement.  *See Hackney v. City of St. Louis*, No. 4:22 CV 410 CDP, 2024 WL 3161616, at *8 (E.D. Mo. June 25, 2024) (deeming insufficient generalized allegations that officer training policies were inadequate and that the commissioner was aware of misconduct and provided inadequate supervision); *Deboe v. Korneman*, No. 20-CV-06180-SRB, 2021 WL 2478514, at *6 (W.D. Mo. June 17, 2021) (characterizing as conclusory allegations that supervisors allowed attacks to occur with such frequency as to place the warden on notice and failed to implement adequate procedures to prevent inmate violence). *Compare, e.g., Hall v. City of St. Louis*, 465 F. Supp. 3d 937, 948-49 (E.D. Mo. 2020) (noting specific facts regarding the continued deployment and promotion of offending officers).

16

Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ball-Bey v. Chandler*, 415 F. Supp. 3d 884, 889 (E.D. Mo. 2019) (citing *Iqbal*, 556 U.S. at 678-79). At the same time, the Court acknowledges that, at the pleading stage, a plaintiff may not be privy to the specific facts necessary to enhance his assertions. *Deboe*, 2021 WL 2478514 at *6 (citing *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). This would certainly be true with respect to the Commissioner's hiring, training, and discipline of subordinate personnel. As such, though existing caselaw compels the Court to dismiss Counts IV-VI as against the Commissioner at this time, it does so without prejudice.

C. **§ 1983 – City of St. Louis (Counts IV-VI)**

Finally, Plaintiff asserts the same three counts against the City pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Section 1983 liability may attach to a municipality if the constitutional violation resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018); *Monell*, 436 U.S. at 690.

An official policy is a deliberate choice of a guiding principle or procedure made by the municipal officer with final authority over the matter. *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). To the extent Plaintiff's complaint refers to official policies, he pleads that the City's policies were inadequate or non-existent as to the screening, hiring, training, supervision, and discipline of Justice Center employees, resulting in dangerous deficiencies in the housing and segregation inmates, prevention and interruption of altercations, and response to medical emergencies. Plaintiff does not allege that the City's official policies –

17

properly enforced – violated his constitutional rights.[6] Rather, Plaintiff's pleadings focus on the City's unofficial customs and practices and its failure to properly screen, train, supervise, and discipline its employees. The Court examines the complaint accordingly.

To state a claim based on an unofficial custom, a plaintiff must allege facts plausibly suggesting (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the municipality's employees; (2) deliberate indifference to or tacit authorization of such conduct by policymaking officials after notice of that misconduct; and (3) that the plaintiff was injured by acts pursuant to the custom, i.e., that the custom was the moving force behind the constitutional violation. *Watkins v. City of St. Louis, Missouri*, 102 F.4th at 954. To state a claim for failure to train or supervise, a plaintiff must allege facts plausibly suggesting that (1) the City's training practices were inadequate; (2) the City was deliberately indifferent to the rights of others in adopting these training practices, and the City's failure to train was a result of deliberate and conscious choices; and (3) the City's alleged training deficiencies caused the plaintiff's constitutional deprivation. *Id*. Deliberate indifference in the context of a failure to train and supervise requires that the municipal actor "disregarded a known or obvious consequence. *S.M. v. Lincoln Cnty.*, 874 F.3d 581, 585 (8th Cir. 2017). As against municipal defendants, an objective standard applies. *Id*.

Viewing the particulars and totality of Plaintiff's pleadings against the City as summarized in introduction, his allegations boil down to bare assertions and conclusions,

---

[6] In *Monell*, the defendants had official policies requiring pregnant employees to take unpaid leaves of absence when not medically necessary. Enforcement of the policies *as written* violated the plaintiffs' constitutional rights. 436 U.S. at 658. This was also the case in *Clemons v. Basham*, cited by Plaintiff, in that the defendants had an official policy prohibiting Muslim prayer. No. 4:22-CV-158 SRW, 2023 WL 8619134, at *19-20 (E.D. Mo. Dec. 13, 2023). By contrast, when an official policy is *facially* lawful, a plaintiff must frame his claim as a deliberately indifferent failure to train and supervise. *See Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 390-93 (8th Cir. 2007) (discussing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989)).

repeating applicable labels and buzzwords but lacking the factual enhancement necessary to withstand dismissal. *Hamilton*, 621 F.3d at 817–18. While the quantum of detail available at the pleading stage may vary from one case to another, at least some degree of factual specificity is required, and courts may take judicial notice of public information. *See e.g., Mahdi v. Bush*, No. 4:19-CV-00183-SRC, 2019 WL 6020907, at *7-8 (E.D. Mo. Nov. 14, 2019) (discussing how public data might indicate a pattern); *Hackney*, 2024 WL 3161616, at *4 (noting outside sources and other litigation regarding jail conditions).

As with Plaintiff's claims against the Commissioner, the pleadings lack specific factual enhancements, beyond this occurrence, to permit an inference that the City had notice of a widespread pattern of similar misconduct and chose not to rectify it. Consequently, the Court must dismiss Counts IV-VI against the City but does so without prejudice.

## CONCLUSION

Finally, Plaintiff asks the Court for leave to amend his complaint after some discovery in order to rectify any deficiencies identified in this Order. The Court will provide Plaintiff that opportunity on a timeline to be established in a future case management order.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss (Doc. 22) is **GRANTED in part** and **DENIED in part** as follows:

1. On Count I against the City of St. Louis, the motion is denied.

2. On Counts II and III against Officer Jaclyn Rattler and Commissioner of Corrections Jennifer Clemons-Abdullah, the motion is granted, and these counts are dismissed.

3. On Count IV against Officer Rattler, the motion is granted, and this count is dismissed.

19

4. On Count IV against Commissioner Clemons-Abdullah, the motion is granted, and this count is dismissed without prejudice.

5. On Counts V and VI against Commissioner Clemons-Abdullah, the motion is granted, and these counts are dismissed.

6. On Counts IV-VI against the City of St. Louis, the motion is granted, and these counts are dismissed without prejudice.

Dated this 18th day of November 2024.

*/s/ John A. Ross*
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE